# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 24001**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Luis A. TORRES GONZALEZ**
Master Sergeant (E-7), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary[1]

Decided 29 August 2025

———————————

*Military Judge*: Charles E. Wiedie.

*Sentence*: Sentence adjudged 30 June 2023 by SpCM convened at Mac-Dill Air Force Base, Florida. Sentence entered by military judge on 17 July 2023: Confinement for 3 days, reduction to E-6, and a reprimand.

*For Appellant*: Captain Michael J. Bruzik, USAF.

*For Appellee*: Colonel Steven R. Kaufman, USAF; Lieutenant Colonel J. Pete Ferrell, USAF; Major Vanessa Bairos, USAF; Major Brittany M. Speirs, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, KEARLEY, and MCCALL, *Appellate Military Judges*.

Judge KEARLEY delivered the opinion of the court, in which Chief Judge JOHNSON and Judge MCCALL joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

[1] Appellant appeals his conviction under Article 66(b)(1)(A), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866(b)(1)(A) (*Manual for Courts-Martial, United States* (2024 ed.)).

KEARLEY, Judge:

A special court-martial composed of officer members convicted Appellant, contrary to his pleas, of one charge and specification of wrongful use of a controlled substance (cocaine) in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a;[2] and one charge and specification of failure to obey a lawful general regulation, on divers occasions, by wrongfully using delta-8 tetrahydrocannabinol (Delta-8 THC), in violation of Article 92, UCMJ, 10 U.S.C. § 892. The members sentenced Appellant to confinement for three days, reduction to the grade of E-6, and a reprimand. The convening authority took no action on the findings or sentence; however, the convening authority provided language for the reprimand.[3]

Appellant raises four issues on appeal, which we have reworded: (1) whether Appellant's finding of guilty for failure to obey a lawful general regulation by wrongfully using delta-8-tetrahydrocannabinol was factually and legally sufficient; (2) whether Appellant is due relief because of the Government's post-trial delay; (3) whether Appellant was deprived of his constitutional right to a unanimous verdict; and (4) whether Appellant's finding of guilty for unlawful use of cocaine was factually and legally sufficient.[4]

As to issue (3) Appellant is not entitled to relief. *See United States v. Anderson,* 83 M.J. 291 (C.A.A.F. 2023) (holding that a military accused does not have a right to a unanimous verdict under the Sixth Amendment,[5] the Fifth Amendment's due process clause, or the Fifth Amendment's component of equal protection[6]), *cert. denied*, 144 S. Ct. 1003 (2024).

In regard to issue (1) we agree with Appellant and set aside his finding of guilty for failure to obey a lawful general order. As to the remaining assignments of error, we find no error that materially prejudiced Appellant's rights. We affirm the remaining findings of guilty and sentence, as reassessed.

---

[2] Unless otherwise noted, all references in this opinion to the UCMJ are to the *Manual for Courts-Martial, United States* (2019 ed.).

[3] Appellant requested deferment of reduction in grade until entry of judgment, which the convening authority denied.

[4] Issue (4) was personally raised by Appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[5] U.S. CONST. amend. VI.

[6] U.S. CONST. amend. V.

## I. BACKGROUND

At the time of his court-martial, Appellant was a Master Sergeant with nearly 20 years of service. He was experiencing sleep issues, chronic pain, and back issues, which he claimed were exacerbated by numerous deployments and surgeries. One night he went to dinner at a restaurant with his wife, daughter, and some friends. He went into the bathroom of the restaurant, where he heard some sniffing noises from a stall that sounded like someone was using cocaine. Appellant asked the person if he could have some and the person provided him with a bag and a straw. Appellant inhaled cocaine through the straw and his nostrils and returned to his family and friends at the restaurant.[7]

Two days later Appellant was selected for a random urinalysis at MacDill Air Force Base. Several weeks later, Appellant's sample came back positive for the metabolite for cocaine. Appellant was brought into the local office of Air Force Office of Special Investigations (OSI) for an interview. Appellant acknowledged his rights and provided a statement to the investigators where he told them he used cocaine in the bathroom at the restaurant. The investigators asked Appellant if he used any other drugs. Appellant said he did not. Appellant consented to a phone search. The investigators looked at the websites Appellant had recently viewed. One of the searches on Google displayed the query, "how do I beat a marijuana test." The investigators asked Appellant about this Internet search as they had not discussed marijuana. Appellant claimed he only typed in "drug test" and clicked on the first web result that popped up, which was a marijuana test.

After completing his interview, Appellant provided another urine sample as part of a reinspection pursuant to *United States v. Bickel*, 30 M.J. 277 (C.M.A. 1990). This test came back positive for Delta-8 tetrahydrocannabinol (hereinafter, Delta-8 THC). Appellant was brought to OSI for a second interview after his Delta-8 THC urinalysis results. In this interview, Appellant stated that the positive result may have come from using orange gummies that a friend gave him to help him sleep. He stated he ate the gummies for two weeks prior to the second urinalysis. During this time, Appellant was on leave, and claimed he believed the gummies contained cannabidiol (CBD) and were a "[m]elatonin type medicine" to help him sleep. He also stated that he did not know there was a connection between CBD and Delta-8 THC.

Appellant testified at his trial on the merits, along with several other witnesses who testified on Appellant's behalf. Both Appellant and the witnesses shared that Appellant seemed to suffer physical and mental trauma after he

---

[7] This description of events is based on Appellant's confession to Air Force Office of Special Investigations investigators and his testimony.

volunteered for a particular deployment. Appellant described witnessing disturbing images related to an aircraft returning from the withdrawal of American military forces from Afghanistan. He also described other deployments where he witnessed seeing the remains of service members being transported back from Iraq and Afghanistan. Appellant also testified about his back injury, multiple back surgeries, and the resulting surgical complications. He highlighted the near constant pain he has been in for the last 10 years. He also described being unable to fall asleep and told the members he had been diagnosed with several mental health conditions.

## II. DISCUSSION

### A. Legal and Factual Sufficiency

Appellant argues that his finding of guilty for use of Delta-8 THC was factually and legally insufficient because, in part, the regulation that Appellant was convicted of violating was obsolete. The Government agrees that Appellant's finding of guilty for this offense was legally insufficient and the conviction should be set aside and dismissed with prejudice. We agree.

Additionally, Appellant argues that the finding of guilty for unlawful use of cocaine was factually and legally insufficient. We disagree with Appellant's arguments and find the conviction for unlawful use of cocaine to be legally and factually sufficient.

#### 1. Additional Background

##### a. Failure to obey a lawful general regulation

The Government charged Appellant with failing to obey Department of the Air Force Manual (DAFMAN) 44-197, Guidance Memorandum, dated 16 August 2021, paragraph 1.2.2.1, on divers occasions, by wrongfully using Delta-8 tetrahydrocannabinol, a synthetic tetrahydrocannabinol. The memorandum indicated that it "becomes void after one year has elapsed from the date of this Memorandum, or upon publication of an Interim Change or rewrite of DAFMAN 44-197, whichever is earlier."

The Government charged Appellant with committing the alleged offense "on divers occasions between on or about 1 September 2022 and on or about 14 September 2022."

##### b. Unlawful Use of Cocaine

The Government charged Appellant with wrongfully using cocaine. Appellant tested positive for cocaine at 220 nanograms per milliliter. The Department of Defense legal cutoff for cocaine is 100 nanograms per milliliter. Following a rights advisement, Appellant confessed that he had ingested three "bumps" of cocaine while in the restroom of a restaurant near Tampa, Florida.

Appellant admitted to law enforcement that he knew the consumption of cocaine was illegal and no one tricked, threatened, or coerced him into using cocaine.

During trial, Appellant testified that he ingested cocaine. Appellant also testified that his use of cocaine was "an attempt to take [his] life" and that he "wanted to overdose." Appellant testified that while he was ingesting the cocaine, he did not consciously think about whether using it was illegal.

**2. Law**

We review issues of legal sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted). We review questions of factual sufficiency when an appellant asserts an assignment of error and shows a specific deficiency in proof. *United States v. Harvey*, 85 M.J. 127, 129 (C.A.A.F. 2024) (citing Article 66(d)(1)(B), UCMJ, 10 U.S.C. § 866(d)(1)(B)). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Rodela*, 82 M.J. 521, 525 (A.F. Ct. Crim. App. 2021) (citing *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993)).

"The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (citation omitted). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted). As a result, "[t]he standard for legal sufficiency involves a very low threshold to sustain a conviction." *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (alteration in original) (citation omitted). "This deferential standard impinges upon the factfinder's discretion only to the extent necessary to guarantee the fundamental protection of due process of law." *United States v. Mendoza*, 85 M.J. 213, 217 (C.A.A.F. 2024) (internal quotation marks and citation omitted).

The factual sufficiency standard in the current version of Article 66(d)(1)(B), UCMJ, FACTUAL SUFFICIENCY REVIEW, states:

> (i) In an appeal of a finding of guilty under subsection (b), the Court may consider whether the finding is correct in fact upon request of the accused if the accused makes a specific showing of a deficiency of proof.

> (ii) After an accused has made a showing, the Court may weigh the evidence and determine controverted questions of fact subject to—

(I) appropriate deference to the fact that the trial court saw and heard the witnesses and other evidence; and

(II) appropriate deference to findings of fact entered into the record by the military judge.

(iii) If, as a result of the review conducted under clause (ii), *the Court is clearly convinced that the finding of guilty was against the weight of the evidence*, the Court may dismiss, set aside, or modify the finding, or affirm a lesser finding.

10 U.S.C. § 866(d)(1)(B), *Manual for Courts-Martial, United States* (2024 ed.) (2024 *MCM*) (emphasis added).

"[T]he requirement of 'appropriate deference' when a [Court of Criminal Appeals (CCA)] 'weigh[s] the evidence and determine[s] controverted questions of fact' . . . depend[s] on the nature of the evidence at issue." *Harvey*, 85 M.J. at 130 (third and fourth alterations in original). It is within this court's discretion to determine what level of deference is appropriate. *Id.*

"[T]he quantum of proof necessary to sustain a finding of guilty during a factual sufficiency review is proof beyond a reasonable doubt, the same as the quantum of proof necessary to find an accused guilty at trial." *Id.* at 131 (internal quotation marks omitted).

For this court "to be 'clearly convinced that the finding of guilty was against the weight of the evidence,' two requirements must be met." *Id.* at 132. First, we must decide that evidence, as we weighed it, "does not prove that the appellant is guilty beyond a reasonable doubt." *Id.* Second, we "must be clearly convinced of the correctness of this decision." *Id.*

Military jurisprudence has long held that "direct evidence of a crime or its elements is not required for a finding of guilty; circumstantial evidence may suffice." *United States v. Hart*, 25 M.J. 143, 147 (C.M.A. 1987) (citation omitted).

In order to convict Appellant of failure to obey a lawful general regulation, as alleged in the Specification of Charge II, the Government was required to prove: (1) that there was in effect a certain lawful general regulation, to wit: Department of the Air Force Manual 44-197, Guidance Memorandum, dated 16 August 2021, paragraph 1.2.2.1; (2) that Appellant had a duty to obey such regulation; and (3) that on divers occasions between on or about 1 September 2022 and 14 September 2022, within the continental United States, Appellant failed to obey this lawful general regulation by wrongfully using Delta-8 tetrahydrocannabinol, a synthetic tetrahydrocannabinol. *Manual for Courts-Martial, United States* (2019 ed.) (*MCM*), pt. IV, ¶ 18.b.(1).

In order to convict Appellant of wrongful use of cocaine, a Schedule I controlled substance, as alleged in the Specification of Charge I, the Government was required to prove: (1) within the continental United States, on or about 12 August 2022, Appellant used a controlled substance (cocaine); and (2) the use by Appellant was wrongful. The term "wrongful" means without legal justification or authorization. *See MCM*, pt. IV, ¶ 50.c.(5). A "controlled substance" means any substance that is included in Schedules I through V established by the Controlled Substances Act of 1970 (21 U.S.C. § 812). *MCM*, pt. IV, ¶ 50.c.(1).

### 3. Analysis

#### a. Failure to obey a lawful general regulation

Appellant argues that the regulation he was convicted of violating was obsolete. We agree.[8] The first element of Article 92(1), UCMJ, required the Government to prove the guidance memorandum was in effect at the time of the alleged misconduct. The Government provided excerpts from the guidance memorandum which stated, "This memorandum becomes void after one year has elapsed from the date of this Memorandum, or upon publication of an Interim Change or rewrite of DAFMAN 44-197, whichever is earlier." The date of the memorandum as reflected in both the Prosecution Exhibit related to the memorandum and the charging language on the specification was 16 August 2021, which meant the guidance memorandum, absent an Interim Change or DAFMAN 44-197 rewrite, became void on 16 August 2022. The Government charged Appellant with committing the alleged offense "on divers occasions between on or about 1 September 2022 and on or about 14 September 2022." The "guidance memorandum" was not in effect at the time Appellant used Delta-8 THC. As a result, we set aside the findings of guilty to Charge II and its Specification and dismiss Charge II and its Specification with prejudice. *See United States v. Henderson*, No. ACM 40419, 2025 CCA LEXIS 172, at *18 (A.F. Ct. Crim. App. 18 Apr. 2025) (unpub. op.) (setting aside a finding of guilty to the failure to obey a lawful regulation because the Government failed to prove beyond a reasonable doubt that the appellant's misconduct occurred when the lawful general regulation concerned was in effect).

#### b. Unlawful use of cocaine

Appellant claims he raised a "specific deficiency in proof" triggering a factual sufficiency review of the findings under Article 66, UCMJ, by challenging

---

[8] Appellant separately argues his conviction for failing to obey a lawful regulation was legally and factually insufficient because the Government did not prove the required facts. Since we agree with Appellant's argument on the first basis, we do not consider Appellant's additional arguments on this issue.

whether the Government proved his unlawful act of using cocaine was voluntary. Appellant claims that the evidence "adduced at trial shows [he] was in a state of extreme physical and mental pain that compromised his decision-making capacity" and "undermin[ed] the notion that he purposely engaged in criminal behavior by knowingly consuming cocaine."

We find the Government provided sufficient evidence for all elements of the offense of wrongful use of cocaine through witness testimony, physical evidence, and Appellant's own testimony. This evidence included a positive urinalysis result, Appellant's interview with law enforcement, and his signed written statement. Viewing the evidence in the light most favorable to the Government, we find that a rational trier of fact could have found the essential elements of wrongful use of cocaine beyond a reasonable doubt. *See Robinson*, 77 M.J. at 297−98. Therefore, we find Appellant's convictions legally sufficient.

As to the factual sufficiency of the specifications, we assume without deciding that Appellant properly made a request for a factual sufficiency review by asserting a specific showing of a deficiency of proof as required under Article 66(d)(1)(B)(i), UCMJ. However, having given appropriate deference to the fact that the members saw and heard the witnesses and other evidence, we are not clearly convinced that Appellant's conviction for wrongful use of cocaine is against the weight of the evidence. Thus, the finding for this offense is factually sufficient.

## B. Post-Trial Delay

Appellant seeks relief due to, what he characterizes as, the Government's "excessive delay" in processing his court-martial after the military judge signed the entry of judgment. Appellant claims that this delay was due to the Government's 81-day delay in informing Appellant of his right to appeal and the 129-day delay in delivering a complete record of trial after his case was docketed with this court. Appellant asks us to provide relief by setting aside his reduction in rank. We find no relief is warranted.

### 1. Additional Background

Appellant was sentenced on 30 June 2023. The military judge signed the entry of judgment on 13 July 2023. On 19 September 2023, the Government provided Appellant with a summarized transcript within a record of trial and a letter advising him of his right to file for appeal before this court within 90 days pursuant to Article 66, UCMJ, 10 U.S.C. § 866(c)(1)(A).

On 12 December 2023, Appellant filed his notice of appeal. Later that same day, on 12 December 2023, this court docketed his case and ordered the Government to "forward a copy of the record of trial to the court forthwith," as it had not been received yet. The record of trial, with a verbatim transcript, was provided to this court on 19 April 2024.

Subsequently, Appellant requested and received ten enlargements of time. Appellant ultimately submitted his brief on 28 April 2025. On 28 May 2025, the Government submitted its answer to Appellant's assignments of error. On 4 June 2025, Appellant filed his reply brief.

**2. Law**

On 23 December 2022, Congress amended Articles 66 and 69, UCMJ, 10 U.S.C. §§ 866, 869. *See* The National Defense Authorization Act for Fiscal Year 2023 (FY23 NDAA), Pub. L. No. 117–263, § 544, 136 Stat. 2395, 2582–84 (23 Dec. 2022). As amended, Article 66(b)(1)(A), UCMJ, expanded CCA jurisdiction to any judgment of a special or general court-martial, irrespective of sentence, that included a finding of guilty. 10 U.S.C. § 866(b)(1)(A) *MCM* (2024 ed.).

We review de novo whether an appellant is entitled to relief for post-trial delay. *United States v. Livak*, 80 M.J. 631, 633 (A.F. Ct. Crim. App. 2020) (citing *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006)).

In *Moreno,* the United States Court of Appeals for the Armed Forces (CAAF) identified thresholds for facially unreasonable delay during three particular segments of the post-trial and appellate process. 63 M.J. at 141–43 (citations omitted). Specifically, our superior court established a presumption of facially unreasonable delay where: (1) the convening authority did not take action within 120 days of the completion of trial, (2) the record was not docketed with the CCA within 30 days of the convening authority's action, or (3) the CCA did not render a decision within 18 months of docketing. *Id.* at 142.

In *Livak,* this court recognized that "the specific requirement in *Moreno* which called for docketing to occur within 30 days of action no longer helps us determine an unreasonable delay under the new procedural rules." 80 M.J. at 633. Accordingly, this court established an aggregated sentence-to-docketing 150-day threshold for facially unreasonable delay in cases that were referred to trial on or after 1 January 2019. *Id.* (citation omitted).

However, in light of subsequent statutory changes, this court recently found the 150-day threshold established in *Livak* does not apply to direct appeals, such as Appellant's, that are submitted under the amended Article 66(b)(1)(A), UCMJ, effective 23 December 2023. *See United States v. Boren*, No. ACM 40296 (f rev), 2025 CCA LEXIS 103, at *47 (A.F. Ct. Crim. App. 19 Mar. 2025) (unpub. op.). This court noted, "[t]hese statutory changes substantially altered the sequence of post-trial events in such [direct appeal] cases" as compared to the mandatory review cases our superior court contemplated in *Moreno. Id.* at 47–48. Therefore, although we acknowledge appellants in such cases still enjoy constitutional due process rights to timely post-trial review, we decline to establish a new specific timeframe for a facially unreasonable delay from sentence-to-docketing in direct appeal cases.

Even without a specific timeframe, we can determine if there is a case-specific facially unreasonable delay. *See United States v. Gray,* 2025 CCA LEXIS 122, at *15–17 (A.F. Ct. Crim. App. 24 Mar. 2025) (unpub. op.) (recognizing it is possible an appellant could demonstrate a case-specific facially unreasonable delay outside of *Livak* and *Moreno* that would trigger a *Barker*[9] due process analysis), *rev. denied*, 2025 CAAF LEXIS 498 (C.A.A.F. 24 Jun. 2025).

Where there is a facially unreasonable delay, we examine the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice [to the appellant]." *Moreno*, 63 M.J. at 135 (citations omitted). In *Barker*, the Supreme Court also identified three types of cognizable prejudice for purposes of an appellant's due process right to timely post-trial review: (1) oppressive incarceration; (2) "particularized anxiety and concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision;" and (3) impairment of the appellant's grounds for appeal or ability to present a defense at a rehearing. *See id.* at 138–40 (citations omitted). "Of those, the most serious is the last [type], because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker*, 407 U.S. at 532.

Additionally, where an appellant has not shown prejudice from the delay, we cannot find a due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

Independent of any due process violation, this court may provide appropriate relief where there is "excessive delay in the processing of the court-martial after the judgment was entered into the record." *United States v. Valentin-Andino*, 85 M.J. 361, 364 (C.A.A.F. 2025) (citing Article 66(d)(2), UCMJ, 10 U.S.C. § 866(d)(2)). If a CCA decides relief is warranted for excessive post-trial delay under Article 66(d)(2), UCMJ, "that relief must be 'appropriate,' meaning it must be suitable considering the facts and circumstances surrounding that case." *Id.* at 367. "This does not require a [CCA] to provide relief that is objectively meaningful, and it does not obligate a [CCA] to explain its reasoning regarding the relief it does provide." *Id.*

### 3. Analysis

Appellant argues he was subject to excessive delay in two instances. First, Appellant argues that the 81-day delay between sentencing and the Government providing notice to Appellant of his right to appeal was too great. Second, Appellant argues that the delay of 129 days between this court docketing the

---

[9] *Barker v. Wingo*, 407 U.S. 514 (1972).

case and our receipt of the record of trial with a verbatim transcript was excessive.

We begin our analysis by restating that we decline to establish a new specific timeframe for a presumptive facially unreasonable delay to cover the period from sentence-to-docketing in direct appeal cases. *See Boren*, unpub. op. at *47 (explaining that the new procedures applicable to direct appeals give appellants significant control over what post-conviction review process they elect to seek as part of their right to appellate review). However, in regard to Appellant's complaints, we considered Appellant's due process rights to speedy appellate review without presuming a facially unreasonable delay to determine whether Appellant demonstrated a case-specific facially unreasonable delay that would trigger a *Barker* due process analysis. *See Gray,* unpub. op. at *16 (finding no prejudice to appellant from delay, this court determined it could not find a due process violation unless the delay was so egregious that it adversely affected the public's perception of the fairness and integrity of the military justice system).

### a. Post-Trial Delay

### i) Delay in Notice to Appeal

We find that the 81-day delay between sentencing and the Government's notice to Appellant of his right to appeal is not excessive under the circumstances. The court reporter's chronology in the record shows that 52 days elapsed from sentencing to the court reporter sending the summarized transcript and documents to the legal office. The legal office forwarded the record of trial to the numbered Air Force legal office (18 AF/JA) within 23 days, and five of those days included a mandatory evacuation due to Hurricane Idalia. 18 AF/JA mailed out the Notice of Right to Submit Direct Appeal to Appellant one day after it received the record of trial. Given the various steps involved and the evacuation, 81 days is not excessive. *See Gray*, 2025 CCA LEXIS 122 at *12–13 (finding a 125-day delay between sentencing and appellant being notified of his right to file a direct appeal not to be excessive).

### ii) Delay in Receiving Verbatim Transcript

Next, turning to Appellant's second instance of delay, we do not find the 129 days between docketing with this court and our receipt of a record of trial with a verbatim transcript to be an unreasonable delay. Appellant filed his notice of appeal on 12 December 2023, and this court docketed his case the same day. In this court's docketing order, the court ordered the Government to "forward a copy of the record of trial to the court forthwith." A verbatim transcript had not been prepared because prior to Appellant's filing of his notice of appeal, the Government was not required to prepare a verbatim transcript in

11

this case according to guidance in paragraph 11.1.1.1 of DAFMAN 51-203, or Rule for Courts-Martial 1114.

This court received a record of trial on 19 April 2024, with a verbatim transcript. Acknowledging the time it takes to create a verbatim transcript and conduct the necessary routing and certifications, under the circumstances, we do not find a facially unreasonable delay, thus a *Barker* due process analysis does not apply.

### *iii) Relief in Absence of Due Process Violation*

Recognizing our authority under Article 66(d)(2), UCMJ, we have also considered whether relief for excessive post-trial delay is appropriate even in the absence of a due process violation as to Appellant's notice of his right to appeal and this court's receipt of a record of trial with a verbatim transcript. We have carefully considered Appellant's argument that he has suffered harm by the delay as he was "unable to exercise his right to appellate review" and we find that, under the circumstances, he is not entitled to relief.

### *b. Appellate Delay*

Over 18 months have elapsed since Appellant's record of trial was originally docketed with this court. Therefore, under *Moreno* there is a facially unreasonable delay, although we note the 18-month threshold has been exceeded by a little over two months. Accordingly, we have considered the *Barker* factors and find no due process violation. Appellant has not specifically alleged cognizable prejudice from appellate delay, and we do not find any. The delay has not resulted in oppressive incarceration. We do not perceive any particularized anxiety or concern caused by the appellate delay—indeed, Appellant sought an additional 374 days of delay through ten enlargements of time. Moreover, as with the pre-docketing post-trial delay, our review has not occasioned any potential rehearing, nor do we perceive any particular reason why any further appeal might be impaired.

Absent prejudice, we similarly find the post-docketing delay involved in Appellant's case has not been so egregious as to adversely affect the public perception of the military justice system. The majority of the delay was the result of Appellant's requests for enlargements of time in which to file the assignments of error. We find no egregious delay and no violation of Appellant's due process rights. *See Toohey*, 63 M.J. at 362; nor do we find any relief warranted in the absence of a due process violation. *See* 10 U.S.C. § 866(d)(2).

## C. Sentence Reassessment

Having set aside the findings of guilty as to Charge II and its Specification, alleging failure to obey a lawful general regulation, we have considered whether we can reliably reassess Appellant's sentence in light of the non-

exclusive factors identified in *United States v. Winckelmann*, 73 M.J. 11, 15–16 (C.A.A.F. 2013). We find that we can. In this case, several of the factors weigh in favor of reassessment over remand: the penalty landscape has not dramatically changed; the remaining offenses capture the gravamen of the criminal misconduct; and the remaining offenses are of a type the judges on this court are familiar with. *See id.*

By dismissing Charge II and its Specification, Appellant's criminal convictions were reduced by half; however, he was convicted of wrongful use of cocaine, and a reduction in one grade is in no way excessive for that offense. Therefore, a sentence no greater than the court-martial would have imposed for the remaining offense is reducing the three days of confinement to no confinement and setting aside the reprimand.

### III. CONCLUSION

The findings of guilty as to Charge II and its Specification are **SET ASIDE**. Charge II and its Specification are **DISMISSED WITH PREJUDICE**. We affirm only so much of the sentence that provides for reduction to the grade of E-6. The remaining findings, as entered, are correct in law and fact. Article 66(d), UCMJ, 10 U.S.C. § 866(d) (2024 *MCM*). In addition, the sentence, as reassessed, is correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings of guilty as to Charge I and its Specification, and the sentence, as reassessed, are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court